STANDARD ELEVATOR INTERLOCK CO. v. RAMSAY et al.

(Circuit Court of Appeals, Third Circuit. March 6, 1906.)

No. 27.

PATENTS—PRIOR USE—LOCKING DEVICE FOR ELEVATORS.

    In the Muckle and Teamer patent, No. 555,825, for a locking device for passenger elevators, claims 1 and 2 are void; being so broad as to include a device previously in use by others on which the invention of the patent is an improvement, but fully covered and protected by the other and more specific claims. Also *held* not infringed if conceded validity.

Appeal from Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 139 Fed. 28.

Charles Howson, for appellant.

Horace Petitt, for appellees.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. This suit in equity was brought in the court below by the Standard Elevator Interlock Company (here the appellant) against Joseph Ramsay and Isaac Alloways, copart-

ners, trading under the firm name of Excelsior Elevator Company, for the alleged infringement by the defendants of letters patent No. 555,825, dated March 3, 1896, for improvements in elevators, issued to John S. Muckle and William H. B. Teamer, assignors to M. R. Muckle, Jr. Co., of which patent the complainant-appellant became the owner by mesne assignments. The object of the invention as stated in the specification "is to prevent accidents on passenger elevators due to the carelessness of the operator in starting the car while the door is open and leaving the door open after the car has passed the floor." This object, it is stated, is attained "by positively locking the car on the opening of the door and locking the door on the movement of the mechanism to start the car." The patent in suit contains 7 claims, only 2 of which (claims 1 and 2) the complainant-appellant asserts have been infringed by the defendants. The other 5 claims embrace specific features of the invention described in the specification, and it is not alleged by the complainant-appellant that the defendants have infringed any of these 5 claims. The claims in controversy are as follows:

"(1) The combination of an elevator car, the motor-controlling mechanism, a movable well-door at the landing, a latch adapted to lock the door in the closed position, with mechanism on the car adapted to release the door from the latch when the mechanism is operated to stop the car so that the door can be opened, and connections on the car between the last-named mechanism and said motor-controlling mechanism, substantially as described.

"(2) The combination of an elevator-car, motor-controlling mechanism, a sliding door, a latch adapted to engage with the door when closed, a device secured to the wall of the elevator-well, mechanism on the car connected to the motor-controlling mechanism, said mechanism operating to release the door from the latch and in turn to be locked by the device secured to the wall of the elevator-well so as to prevent the car from moving when the door is opened, the said device being held clear of the mechanism on the car by the door when it is closed, substantially as described."

The court below held that claims 1 and 2 of the patent in suit could not be sustained in view of the prior use at the Bingham House in the city of Philadelphia, of an apparatus accomplishing the same result as the combinations of claims 1 and 2. And in its opinion the court, speaking of the Bingham House apparatus, said: "The patentees knew of this device, and their own invention was an improvement thereon, which is amply protected by the more specific claims of the patent." Accordingly the court below entered a decree dismissing the bill of complaint. From that decree the complainant took this appeal.

It is contended on behalf of the appellant that the Bingham House structure was not proved by that measure of evidence necessary to establish an anticipation. This view, however, we are not able to accept. Upon a careful examination of the evidence we think it satisfactorily appears that the Bingham House construction (of the second form) was of the character claimed by the defendants and was installed and in use in the year 1895, prior to the invention of the patent in suit. The conclusion of the court below upon this branch of the case, we think, was clearly right under the proofs. But it is further contended on behalf of the appellant that the Bingham House structure "assuming it to have been what the defendant-appellees con-

tend, did not anticipate the combinations of the complainant's first and second claims." To this branch of the case, then, we address ourselves. It is certainly shown that the Bingham House elevator locking apparatus attained the object of the invention of the patent in suit by means of co-operating devices which securely locked the car on the opening of the door and securely locked the door on the movement of the mechanism to start the car. The following description of the object to be attained given by the complainant's expert we think is as applicable to the Bingham House construction as to the device set forth in the patent in suit:

"It is the particular object of the device set forth in the patent in suit to so connect the device on the car which controls the motor with the device at the landing which secured the door in its closed position, as that the door will not be released until the motor-controller has been brought to that position which results in stopping the car, and also so that the motor-controller will be locked until the door has been moved to its closed position."

From the testimony of the complainant's expert in his examination in chief and in answer to a question propounded by complainant's counsel, we here quote his general description of the Bingham House apparatus and of the differences between it and the apparatus described in the patent in suit:

"The Bingham House elevator as represented by the various exhibits referred to in the question, contains an elevator car and a sliding door for each landing of the elevator well with a latch secured to the landing for preventing the door from being thrown open. This latch is a long, awkward lever, extending from the doorway to the side wall of the elevator well, and is operated by a complication of mechanism, including another lever and rollers and an inclined cam, which are also secured to the wall of the well. One of the levers is in the path of movement of a roller on the car. This roller on the car is connected with the motor-controlling mechanism on the car so that when the controller is placed in a position to stop the car, the roller will be moved outward, so that it can engage the swinging lever secured to the wall of the well, which in turn acting through another roller secured to it and acting upon a cam on the long latch lever, moves the latter so as to permit the door to be opened. This device of the Bingham House elevator differs from the device set forth in the patent in suit, and also from the defendants' device in the fact that there is no 'mechanism on the car operating directly to release the door from the latch.' There is in the Bingham House structure a 'device on the car' which operates a complicated system of levers and cams which are secured to the well wall, and which system of levers and cams it is that in turn operates 'to release the door from the latch.' In the Bingham House elevator there is a device on the car which serves to lock the motor-controlling mechanism, and which is operated by the well-door when the car is stopped opposite to that door. There is no direct connection, however, between the door-releasing mechanism and the controlling-locking mechanism, nor any device secured to the wall of the well which locks the door-releasing mechanism on the car."

Accepting these statements of the complainant's expert, we still are of opinion under the undoubted proofs that the apparatus shown in the patent in suit differs from the Bingham House apparatus (of the second form) only in structural details, and not in the object accomplished or in principle of operation. It is to be observed that the two claims here in controversy are for combinations and are very general in their terms. They do not embrace (as do the other claims) combinations covering specific structural details, but

these two claims, according to the interpretation contended for by the complainant, purport in the broadest sort of terms to cover any combination of the named elements without qualification. And it is by virtue of the broad scope of the claims in suit, and not because of any adoption by the defendants of the special structural features of the complainant's patented device, that infringement on the defendants' part is sought to be established. Undoubtedly, the Bingham House apparatus and that of the complainant differ in the specific form of the parts, but each exhibit in combination the elements broadly described in the claims in suit. So that, if the Bingham House construction had not preceded the patent in suit, but had followed it, we think it plain that that construction would have infringed the first and second claim. But that which would infringe must be held to have anticipated.

Not only was the Bingham House structure a part of the prior art as respects the invention described in the patent in suit, but the patent to Thomas W. Jenkins, No. 540,813, dated June 11, 1895, granted upon an application filed November 30, 1894, is also a part of the prior art. The invention therein disclosed is of the same general character as that of the patent in suit, its object is the same, and that object is accomplished by analogous means. The complainant's patent discloses, indeed, specific improvements on the prior art as shown by the Jenkins patent and the Bingham House structure, and to that extent the complainant should be protected. But its patent should not be allowed to dominate the industry. As to its specific improvements ample protection can be accorded the complainant under the last five claims of its patent. Moreover, the defendants are manufacturing their alleged infringing mechanism for automatically controlling the car at landings under letters patent No. 718,230, dated January 13, 1903, granted to them as assignors of William H. B. Teamer. This latter patent also discloses its own specific features of construction and it stands to the art in the same relative position as the complainant's patent. Both cover improvements of a known apparatus. The differences between the complainant's patent and the prior art, we think, are no greater than are the differences between the patents of the complainant and defendants. To these two patents we think is properly applicable under the proofs the rule laid down by the Supreme Court in McCormick v. Talcott, 20 How. 402, 405, 15 L. Ed. 930:

"But if the invention claimed be itself but an improvement on a known machine by a mere change of form or combination of parts, the patentee cannot treat another as an infringer who has improved the original machine by use of a different form of combination performing the same functions. The inventor of the first improvement cannot invoke the doctrine of equivalents to suppress all other improvements which are not mere colorable invasions of the first."

For the foregoing reasons, the decree of the Circuit Court dismissing the bill of complaint is affirmed.